No. 17-60062

# United States Court Of Appeals
# For The Ninth Circuit

## ALLANA BARONI

*Plaintiff, Appellant, and Cross-Appellee,*

vs.

## WELLS FARGO BANK, N.A., AS TRUSTEE, ETC.

*Defendant, Appellee, and Cross-Appellant.*

*Appeal from Bankruptcy Appellate Panel for the Ninth Circuit,*
*Case Nos. CC 16-1345, CC 16-1383*

# CROSS-APPELLANT'S OPENING BRIEF

Jan T. Chilton (State Bar No. 47582)
Mary Kate Sullivan (State Bar No. 180203)
Bernard J. Kornberg (State Bar No. 252006)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439
Email: bjk@severson.com

Attorneys for Wells Fargo Bank, N.A. As Trustee For Structured Adjustable Rate
Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17

# CORPORATE DISCLOSURE STATEMENT
[Fed. R. App. P. 26.1]

Pursuant to Fed. R. App. P. 26.1, defendant and appellee state:

Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Co., which is publicly traded on the New York Stock Exchange under the symbol WFC.

Wells Fargo & Co. is a publicly traded corporation that has no parent corporation.

# TABLE OF CONTENTS

**Page**

I.    JURISDICTIONAL STATEMENT ...................................................................1

II.   ISSUE FOR REVIEW ...................................................................................2

III.  STATEMENT OF THE CASE ......................................................................2

IV.  SUMMARY OF ARGUMENT .....................................................................5

V.    THE BANKRUPTCY COURT ERRED IN TREATING ATTORNEY FEES AS PRE-CONFIRMATION DEBT AND PART OF WELLS FARGO'S CLAIM ...................................................................12

    A.    Treating The Fee Award As A Pre-Confirmation Debt Renders It Valueless ...................................................................12

    B.    *Siegal* and *Ybarra* Hold that Post-Petition Attorney's Fees And Costs Are Not Part Of A Pre-Petition Claim if Incurred Due To Voluntary Litigation By The Debtor ...................................................................13

    C.    *SNTL* Muddies the Waters ...................................................................17

    D.    *Castellino Villas* Harmonizes *Siegel* and *SNTL Corp.* ...................................................................19

    E.    The Fee Award Here Arose Out Of A Lawsuit Voluntarily Pursued By Baroni And Outside Wells Fargo's Fair Contemplation ...................................................................21

        1.    The Bankruptcy Court And The BAP Incorrectly Applied *Castellino Villas* ...................................................................21

        2.    Wells Fargo Had No Duty Or Right To Object To The Plan ...................................................................24

        3.    The Fee Award Was Not A Pre-Petition Claim Even If The Plan Satisfied The "Fair Contemplation" Test ...................................................................27

        4.    Wells Fargo's Filing Of Its Claim Did Not Place The Fee Award Within Its Fair Contemplation ...................................................................29

5.     The Filing Of A Chapter 11 Case Does Not Mandate  A Different Result ......................................................................... 34

VI.    CONCLUSION ................................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*In re Baldridge*,
   232 B.R. 394 (Bankr. N.D. Ind. 1999) .............................................................31

*In re Baroni*,
   2015 WL 6941625 (B.A.P. 9th Cir. Nov. 10, 2015), *aff'd*, 697 F.
   App'x 562 (9th Cir. 2017) .................................................................................2, 4

*In re Baroni ("Baroni II")*,
   697 F. App'x 562 (9th Cir. 2017)...........................................................................4

*In re Bisch*,
   159 B.R. 546 (B.A.P. 9th Cir. 1993) ...................................................................23

*In re Castellino Villas, A. K. F. LLC*,
   836 F.3d 1028 (9th Cir. 2016) .....................................................................*passim*

*In re Dill*,
   30 B.R. 546 (B.A.P. 9th Cir. 1983), *aff'd*, 731 F.2d 629 (9th Cir.
   1984) ....................................................................................................................14

*United States ex rel. Familian Northwest, Inc. v. RG & B Contractors,
   Inc.*,
   21 F.3d 952 ( 9th Cir. 1994) ..................................................................................1

*In re Gillespie*,
   516 B.R. 586 (B.A.P. 9th Cir. 2014) ...................................................................24

*In re Grynberg*,
   143 B.R. 574 (D. Colo. 1990), *aff'd*, 966 F.2d 570 (10th Cir. 1992) ................36

*Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing
   Ironworkers' Local Union 75 v. Madison Indus., Inc.*,
   733 F.2d 656 (9th Cir. 1984) ................................................................................1

*In re Jensen*,
   995 F.2d 925 (9th Cir. 1993) ...............................................................................19

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991) ............................................................................................23

*In re Kelley*,
  199 B.R. 698 (B.A.P. 9th Cir. 1996) ................................................................26

*Nukote Int'l, Inc. v. Office Depot, Inc.*,
  2011 WL 2784565 (S.D. Fla. July 14, 2011) ...................................................36

*In re Ockerlund Const. Co.*,
  308 B.R. 325 (Bankr. N.D. Ill. 2004) ...............................................................29

*In re Palmdale Hills Prop., LLC*,
  423 B.R. 655 (B.A.P. 9th Cir. 2009), *aff'd*, 654 F.3d 868 (9th Cir.
  2011) ..................................................................................................................32

*In re Pardee*,
  193 F.3d 1083 (9th Cir. 1999) ..........................................................................25

*In re Polysat, Inc.*,
  152 B.R. 886 (Bankr. E.D. Pa. 1993) ...............................................................29

*Siegel v. Fed. Home Loan Mortgage Corp.*,
  143 F.3d 525 (9th Cir. 1998) ....................................................................*passim*

*In re SNTL Corp.*,
  571 F.3d 826 (9th Cir. 2009) ....................................................................*passim*

*State Unauthorized Practice of Law Comm. v. Paul Mason & Assocs.,
  Inc.*,
  46 F.3d 469 (5th Cir. 1995) ..............................................................................31

*In re Sure-Snap Corp.*,
  983 F.2d 1015 (11th Cir. 1993) ...........................................................24, 29, 36

*In re TCI 2 Holdings, LLC*,
  428 B.R. 117 (Bankr. D.N.J. 2010) ..................................................................27

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010).........................................................................................25

*In re WCI Communities, Inc.*,
  2013 WL 2153108, at *2 (Bankr. D. Del. May 17, 2013)................................27

*In re Wright*,
 509 B.R. 250 (Bankr. D. Ariz. 2014)....................................................10, 26, 36

*In re Ybarra*,
 424 F.3d 1018 (9th Cir. 2005) ...................................................................*passim*

*In re Zilog, Inc.*,
 450 F.3d 996 (9th Cir. 2006) ............................................................................28

**STATUTES; RULES**

United States Code
 Title 11,
  § 101 ...............................................................................................14
  § 502 .............................................................................25, 26, 29, 32
  § 506 ...............................................................................................12
  § 524 .........................................................................................13, 23
  § 554 ...............................................................................................35
  § 704 ...............................................................................................35
  § 1123 .......................................................................................10, 25
  § 1129 .................................................................................10, 25, 27
  § 1141 ........................................................................ 10, 13, 21, 27-29
 Title 15
  § 1692, et seq...................................................................................32
 Title 28
  § 157 .................................................................................................1
  § 158 .................................................................................................2
  § 1334 ..............................................................................................1

Cal. Business and Professions Code
  § 17200 et seq. ...............................................................................32

Federak Rules of Appellate Procedure
 Rule (4)(a) ...............................................................................................2
 Rule 6(b) .................................................................................................2

Federal Rules of Bankruptcy Procedure
 Rule 8002 .................................................................................................2
 Rule 3007 ..............................................................................................26
 Rule 7001 .........................................................................................26, 32

# I.

## JURISDICTIONAL STATEMENT

This matter arises from an adversary proceeding that debtor and plaintiff Allana Baroni ("Baroni") brought in her Chapter 11 bankruptcy case against Wells Fargo Bank, N.A., as trustee ("Wells Fargo").[1]  ER II:221.  The bankruptcy court had jurisdiction of the adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334.

After entering summary judgment in Wells Fargo's favor, the bankruptcy court issued a post-judgment order awarding Wells Fargo attorney fees on September 30, 2016.  ER I:28.  The order determined that the fees would be added to the allowed amount of Wells Fargo's proof of claim and be subject to treatment and discharge under Baroni's confirmed Chapter 11 plan.  ER I:29.  The post-judgment order awarding attorney fees was an appealable final order.  *See United States ex rel. Familian Northwest, Inc. v. RG & B Contractors, Inc*., 21 F.3d 952, 954-55 ( 9th Cir. 1994); *Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers' Local Union 75 v. Madison Indus., Inc.*, 733 F.2d 656, 659 (9th Cir. 1984).

Baroni filed her appeal from the attorney fee order to the Ninth Circuit Bankruptcy Appellate Panel (the "BAP") on October 14, 2016.  ER II:11.  Wells Fargo filed its cross-appeal on October 28, 2016.  ER II:10.  Baroni's appeal was

---

[1]    In this proceeding, Wells Fargo appears as trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17.

timely, as was Wells Fargo's cross-appeal. Fed. R. Bank. P. 8002(a)(1), (3). The BAP had jurisdiction of the appeal and cross-appeal pursuant to 28 U.S.C. § 158.

On July 14, 2017, the BAP issued a memorandum decision affirming the decision of the bankruptcy court. ER I:4. Baroni filed her appeal to this Court on August 14, 2017. ER II:9. Wells Fargo filed its cross-appeal on August 17, 2017. ER II:4. Both appeals were again timely. Fed. R. App. P. (4)(a), 6(b).

On June 19, 2018, the Ninth Circuit dismissed Baroni's appeal pursuant to a stipulation of the parties (No. 17-60061, Dkt. #23). That left this cross-appeal as the only issue to be resolved by this Court.

## II.

## ISSUE FOR REVIEW

Did the bankruptcy court err in determining that the attorney fees it awarded should be added to Wells Fargo's claim and be discharged under Baroni's Chapter 11 plan?

## III.

## STATEMENT OF THE CASE

The facts giving rise to this adversary proceeding were set forth in detail by the BAP in its opinion affirming summary judgment, which was in turn affirmed by this Court. *In re Baroni* ("*Baroni I*"), 2015 WL 6941625, at *1-3 (B.A.P. 9th Cir.

Nov. 10, 2015), *aff'd*, 697 F. App'x 562 (9th Cir. 2017).  Only an abbreviated version of those facts is stated below.

Baroni and her husband bought a condominium in Henderson, Nevada.  To finance the purchase, they obtained a loan of slightly less than $675,000 from Countrywide Home Loans, Inc., signing a promissory note and a deed of trust to secure their obligation to repay the loan.  ER II:151-180, II:218-219.

In 2012, Baroni commenced her bankruptcy case.  ER III:10.  Later that month, the case was converted to a Chapter 11 proceeding.  ER II:118, lines 8-10.

Wells Fargo filed a proof of claim in June 2012.  ER II:140.

In April 2013, Baroni obtained an order confirming her second amended reorganization plan.  ER II:241.  In relevant part, Baroni set forth in her disclosure statement and plan that she disputed and objected to Wells Fargo's proof of claim but that, to the extent the bankruptcy court ultimately allowed any claim secured by the Henderson property, she would pay the holder of that allowed claim in accordance with the terms of her plan.  ER II:269-270, 276-277.

Also in April 2013, Baroni filed her adversary complaint against Wells Fargo. Her operative first amended complaint sought disallowance of its claim on the ground Wells Fargo was not the holder of the promissory note or beneficiary of the deed of trust on the Henderson condominium.  ER II:221.  Her complaint also alleged claims

for unjust enrichment, violation of the Fair Debt Collection Practices Act, and California's Unfair Competition Law.  ER II:230-238.

In December 2014, the bankruptcy court entered summary judgment against Baroni and in favor of Wells Fargo on all of her claims.  ER II:218.  Baroni appealed. The BAP affirmed the summary judgment in November 2015.  *Baroni I*, 2015 WL 6941625, at *8.  Baroni appealed the BAP's judgment to this Court, which affirmed the summary judgment in September 2017.  *In re Baroni ("Baroni II"),* 697 F. App'x 562, 563 (9th Cir. 2017).

Meanwhile, in December 2014, Wells Fargo moved under the deed of trust's two attorney fee provisions for an award of attorney fees incurred in the adversary proceeding.  ER II:114.  Baroni filed opposition.  ER II:97.  Wells Fargo replied.  ER II:90.  At the May 13, 2015 hearing on the motion, the bankruptcy court stated that it intended to grant the motion and award Wells Fargo attorney fees, but it requested additional briefing as to whether the fees should treated as pre- or post-confirmation debt.  ER II:88.

Wells Fargo filed a supplemental brief addressing that issue.  ER II:77.  Baroni filed an opposing brief.  ER II:65.  Wells Fargo filed a reply.  ER II:52.  Wells Fargo also filed a second supplemental brief.  ER II:39.  Baroni filed a second supplemental opposition and a later brief on the choice of applicable law.  ER II:22.  Wells Fargo

concluded the briefing with a supplemental declaration detailing the fees it had incurred while its motion for an award of attorney fees was pending.  ER II:15.

Almost a year later, the bankruptcy court issued its opinion and order awarding Wells Fargo attorney fees but directing that they be added to Wells Fargo's pre-petition claim subject to Baroni's bankruptcy discharge.  ER I:28-49.

Baroni filed a notice of appeal on October 14, 2016.  ER II:11.  Wells Fargo filed a cross appeal.   ER II:10.  On appeal, the BAP affirmed the order of the bankruptcy court.  ER I:3-27.  Baroni then filed an appeal and Wells Fargo, a cross-appeal.  ER II:4-9.  Subsequently, Baroni and Wells Fargo stipulated to dismiss her appeal, leaving the cross-appeal as the sole appeal in this matter.  (See Case No. 17-60061, Dkt. #23)

## IV.

## SUMMARY OF ARGUMENT

In 2013, Baroni filed for bankruptcy.  ER II:118, lines 8-10.  She then confirmed a Chapter 11 plan which provided that each of her five loans on her (quite expensive) properties were each "disputed" due to nebulous securitization errors.  See ER II:269-270, 276-277.  She then promptly filed adversary proceedings as to each loan, none of which, so far, have been adjudicated in her favor.[2]

---

[2] Three of the proceedings have been adjudicated against her by summary judgment, with each one judgment appealed to this Court and affirmed along the way.  One is still pending.  The last one was dismissed with prejudice by stipulation of the parties.

Wells Fargo is one of the unlucky Baroni lenders who were subject to her frivolous lawsuits. Wells Fargo prevailed on summary judgment, then prevailed on appeal to the BAP and this Court. While those appeals were pending, Wells Fargo sought its attorneys' fees and costs for litigating the action to judgment. The bankruptcy court awarded those fees and costs, but concluded that they were part of the Wells Fargo's pre-petition claim. ER I:28. As the pre-petition claim is undersecured and the unsecured creditors are only entitled to a minimal pot-plan payment, this makes the fee award valueless. Under a string of cases decided by this Court, the decision of the bankruptcy court to award the fees and costs as part of the pre-petition claim was incorrect.

As the bankruptcy court correctly found, the fee award arose out of post-confirmation litigation. ER I:44, lines 14-15. Under *Siegel v. Fed. Home Loan Mortgage Corp.* and *In re Ybarra*, the test for whether a post-confirmation fee award is part of a pre-petition contingent claim is simple. If the litigation was voluntarily undertaken or continued post-petition by the debtor, then it is not part of a pre-confirmation contingent claim and is not subject to the debtor's discharge. *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 528 (9th Cir. 1998). The logic is simple: "by voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation." *In re Ybarra,* 424 F.3d 1018, 1024 (9th Cir. 2005).

In 2016, while Wells Fargo's motion for attorneys' fees and costs was pending before the bankruptcy court, this Court issued its decision in the matter of *In re Castellino Villas*. This decision, for the first time, used this Circuit's "fair contemplation" test to determine if a post-petition fee award was part of a pre-petition claim. *In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1031 (9th Cir. 2016). Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009). However, this Court made clear that this holding did not overrule *Siegal* and *Ybarra*. To the contrary, the Court concluded that Siegal's holding is "is consistent with our fair contemplation test." *Castellino Villas*, 836 F.3d at 1035.

The bankruptcy court incorrectly concluded, and the BAP agreed, that *Castellino Villas* holding mandated the conclusion that the fee award in this case arose pre-confirmation and was thus part of Wells Fargo's pre-petition claim. ER I:21-23; ER I:44-48. The reasoning behind this decision was as such.

In *Castellino Villas*, the creditor filed a pre-petition lawsuit against the debtor arising out of a breach of contract and foreclosure on a mechanic's lien. *Id*. at 1031. The debtor then filed for Chapter 11 bankruptcy. *Id*. at 1032. The creditor received relief from stay and continued the lawsuit in state court. *Id*. The creditor further objected to the debtor's plan, and to resolve the objection, agreed to a settlement

which required the parties to continue the lawsuit in state court. *Id*. The creditor prevailed in state court and sought his attorneys' fees and costs. *Id*. The costs were awarded, but were deemed subject to the debtor's Chapter 11 discharge. *Id*. at 1037. The creditor appealed.

This Court affirmed as it found that the fee award met the "fair contemplation test" because the debtor "was not relieved of liability under its agreement" and thus was deprived of "a fresh start by its discharge in bankruptcy." *Id*. at 1036. This Court focused on two facts to come to this determination. First, that the creditor initiated the pre-petition litigation out of which the fee award arose. *Id*. Second, that the creditor and the debtor agreed, in the plan confirmation process, to continue the litigation post-confirmation. *Id*.

The bankruptcy court and BAP concluded that because Baroni's plan, like the one in *Castellino Villas,* includes a provision that she intends to bring post-confirmation litigation as to Wells Fargo, Wells Fargo must, like the *Castellino Villas* creditor, have contemplated the litigation when the plan was confirmed. ER I:21; ER I:44. They came to this conclusion despite noting that, unlike in *Castellino Villas*, there was no pre-confirmation litigation between the parties. ER I:44, lines 14-15.

This reading was incorrect as it converts the "fair contemplation" test into merely the "contemplation" test. Under *Siegal* and *Castellino Villas*, a creditor does not fairly contemplate post-petition litigation, and thus the attorneys' fees that may

arise from it, simply because the debtor has threatened suit. Instead, a claim is fairly contemplated if the creditor took some pre-petition action to force the debtor into post-confirmation litigation or continued pre-petition litigation against the debtor post-petition. In such cases, the creditor may fairly contemplate that the litigation the creditor caused or initiated pre-petition will result in attorneys' fees that may be incurred post-confirmation.

In *Castellino Villas*, this requirement was easily met as the creditor filed the pre-petition lawsuit for which it sought a fee award. In *Castellino Villas,* the settlement agreement regarding plan confirmation was relevant not because it put the creditor on notice of the lawsuit, but because the settlement agreement showed that the debtor had not "returned to fray" by continuing the ligation after receiving his discharge. The settlement agreement was evidence that the creditor forced the debtor to continue the pre-petition litigation and, by doing so, imperiled the debtor's fresh start. *Id*. at 1037.

The facts here are meaningfully different. Wells Fargo did not initiate any pre-petition litigation against Baroni. Wells Fargo did not file any plan objection or otherwise contest Baroni's treatment of its claim. All Wells Fargo did was file a proof of claim regarding a consensual lien. Nothing Wells Fargo did initiated post-confirmation litigation against Baroni, continued pre-confirmation litigation against Baroni, or otherwise required her to file a lawsuit to protect her fresh start. Baroni's

choice to bring her adversary proceeding was entirely voluntary. Therefore, Wells Fargo had no basis to "fairly contemplate" that Wells Fargo would accrue post-petition attorneys' fees arising from Wells Fargo's pre-petition acts. Therefore under *Siegal* and *Castellino Villas*, the fee award arose post-confirmation.

Both the bankruptcy court and the BAP suggested that Wells Fargo had a duty to object to the treatment under the plan if it wanted the fees treated as post-confirmation. ER I:47, lines 15-17; ER I:19, lines 10-18. That argument gets it backwards. A Chapter 11 plan treats pre-petition, not post-confirmation claims. 11 U.S.C. §§ 1123, 1129. The bankruptcy court expressly found that the plan did not treat or otherwise speak to any fee award arising out of the planned post-confirmation litigation. ER I:45, line 15. As Wells Fargo asserts that the claim accrued post-confirmation, it would have no basis to object to Baroni's plan. To the contrary, the fact that Baroni did not include the claim in the plan is grounds for finding that it arose post-confirmation. *In re Wright*, 509 B.R. 250, 258 (Bankr. D. Ariz. 2014).

Even if the BAP and bankruptcy court were correct that the plan itself caused the claim to arise under bankruptcy law, the fee award would still arise post-petition. Both the bankruptcy court and the BAP concluded that it was the binding effect of the plan that caused the contingent claim to arise. ER I:46, lines 4-5; ER I:21, lines 19-20. A plan only becomes binding once confirmed. 11 U.S.C. § 1141(a). The discharge only applies to debts that "arose before the date of such confirmation." 11

U.S.C. § 1141(d)(1).  Therefore, any claim created by the confirmation of the plan was not subject to discharge.  Further, even if the sheer filing of the plan caused the fee award to arise, that plan was not filed until post-petition.  Therefore, it was error for the bankruptcy court to add the award to the pre-petition claim.

The bankruptcy court also found that under *Castellino Villas* and *SNTL Corp.*, the mere filing of a proof of claim creates the "fair contemplation" as the debtor may object to it.  ER I:45, lines 4-11.  That is not a correct reading of those cases.  There, the proofs of claim arose out of pre-petition litigation that the creditor continued post-petition.  As such, the parties could fairly contemplate that the litigation would continue and thus fees would continue to accrue.  Here, there was no pre-petition litigation.  Further, Baroni's adversary proceeding sought relief far beyond that allowed in a claim objection.  Therefore, the filing of the claim did not give Wells Fargo reason to fairly contemplate the expansive and expensive suit it would be forced to defend.

Finally, the bankruptcy court and the BAP found that Chapter 11 cases have some structural differences that might take it outside of the holding of *Siegal* and *Ybarra*.  ER I:45 n.8; ER I:23, lines 6-15.  Such differences may exist in some bankruptcies, but not in this one.  Baroni kept all property of the estate, including her litigation claims.  ER II:40, line 1; II:41, lines 8-10.  The plan did not call for payment of any recover of the claims to creditors.  Hence, the relief she sought in her post-

petition adversary proceedings was solely for her own benefit, not her creditors'. Therefore, the fee award occurred in litigating those claims is properly charged to her, not her estate.

For all these reasons, the Court should reverse the decision of the bankruptcy court.

## V.

### THE BANKRUPTCY COURT ERRED IN TREATING ATTORNEY FEES AS PRE-CONFIRMATION DEBT AND PART OF WELLS FARGO'S CLAIM

#### A.    Treating The Fee Award As A Pre-Confirmation Debt Renders It Valueless

The issue presented is whether the attorney fees Wells Fargo was awarded should be treated as pre-petition debt and a portion of Wells Fargo's claim or as post-petition debt not subject to discharge in Baroni's Chapter 11 case.

The distinction is crucial, as the bankruptcy court recognized.  *See* ER I:31, lines 16-19.   Under the bankruptcy court's order, the attorneys' fee award of $50,620.76 "shall be added to the allowed amount of Proof of Claim 7-1 and shall be subject to treatment and discharge under Baroni's confirmed Chapter 11 plan."  ER I:29.  Under Baroni's plan, Claim 7-1 is treated as an undersecured claim.  ER II:276-277.  Therefore, the award of the attorneys' fees and costs was added to the unsecured portion of the claim.  11 U.S.C. § 506(a) ("[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the

extent of the value of such creditor's interest in the estate's interest in such property . . . is an unsecured claim to the extent that the value of such creditor's interest or the amount . . . is less than the amount of such allowed claim").

Under Baroni's Chapter 11 plan, unsecured claims are entitled to their pro-rata share of only $50,000 for the payment of all unsecured creditors. ER II:283-284. As other unsecured claims already total many times that sum, any payment from the plan will be minimal. Further, the portion of the claim that is not paid under the Chapter 11 plan will be discharged upon Baroni's completion of all plan payments. 11 U.S.C. § 1141(d)(5). Upon discharge, Wells Fargo will be prohibited from any act "to collect, recover or offset" the debt from Baroni. 11 U.S.C. § 524(a).[3]

Accordingly, whether the attorneys' fee award constitutes part of Wells Fargo's pre-petition claim entirely determines Wells Fargo will be paid its fees and costs for prevailing in the litigation or whether the fee award is entirely worthless.

**B.** *Siegal* **and** *Ybarra* **Hold that Post-Petition Attorney's Fees And Costs Are Not Part Of A Pre-Petition Claim if Incurred Due To Voluntary Litigation By The Debtor**

This Court has considered the issue of the accrual of post-petition fee awards arising out of pre-petition contracts on multiple occasions. The first time this Court considered the issue, and still the touchstone case on this matter, is *Siegel v. Fed.*

---

[3] As the discharge is not yet entered, the plan provides that the "[automatic] stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge." ER II:292, lines 2-6.

*Home Loan Mortgage Corp.*  As shown below, this case continues to control in this matter and mandates that the fee award be deemed post-petition.

In *Siegel*, a creditor foreclosed on the debtor's commercial properties pre-petition. *Siegel*, 143 F.3d at 528.  The debtor then filed for Chapter 7 bankruptcy. *Id.* After receiving a discharge, the debtor brought suit against the creditor for claims arising out of the foreclosure. *Id.*  The creditor prevailed and asked for its attorney's fees, which were awarded, despite the debtor's protestations that they were subject to discharge. *Id.*

This Court affirmed, finding that the critical question was whether the fee award constituted a pre-petition claim under the Bankruptcy Code. *Id.* at 532.  It was undisputed that the contract out of which fee award arose was entered into pre-petition, but that "Siegel's acts which gave rise to Freddie Mac's award occurred post-discharge." *Id.*  The Bankruptcy Code provides that a claim that has not yet accrued still may be allowed if the claim is "contingent." *Id.* (citing 11 U.S.C. § 101(5)). Thus the question this Court confronted was "whether the claim for attorney's fees was contingent and therefore discharged in its entirety." *Id.*

This Court then proceeded to define what constituted a "contingent" claim in the context of an attorney fee award arising out of a pre-petition contract.[4]  The Court

---

[4] "[N]either contingent nor contingent claim is defined" by the Bankruptcy Code. *In re Dill*, 30 B.R. 546, 548 (B.A.P. 9th Cir. 1983), *aff'd*, 731 F.2d 629 (9th Cir. 1984); see also 11 U.S.C. § 101.  The *Siegal* court thus adopted the commonly used defini-

first analyzed a line of cases which found that post-petition liability on a pre-petition

contract was discharged.  In those cases, generally dealing with indemnification, "the

possibility of a claim against the debtor was fixed and entirely out of his hands before

he entered bankruptcy."  *Id*. at 533.  This Court found a clear rationale for concluding

that the claim was contingent in these cases.

> Were he not discharged, that very real threat would stay
> with him and remain a millstone around his economic neck
> as he attempted a fresh start. The very purpose of bank-
> ruptcy proceedings would be cut away. Indeed, a person
> with enormous possible indemnification liability could
> never effectively obtain a fresh start. That is decidedly not a
> proper result, but it is also not the case at hand.

*Id*.

This Court then found that this rationale did not apply to the debtor in *Siegal*.

Had the debtor chosen to do nothing, "Freddie Mac could not pursue him further, nor

could anyone else."  *Id*.

> Siegel's decision to pursue a whole new course of litigation
> made him subject to the strictures of the attorney's fee
> provision. In other words, while his bankruptcy did protect
> him from the results of his past acts, including attorney's
> fees associated with those acts, it did not give him carte
> blanche to go out and commence new litigation about the
> contract without consequences.

*Id.* at 534.

---

tion that "[a] "contingent claim is 'one which the debtor will be called upon to pay
only upon the occurrence or happening of an extrinsic event which will trigger the
liability of the debtor to the alleged creditor.'" *Siegel*, 143 F.3d at 532.

The *Siegel* debtor "chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." *Id* at 533.

Based on this analysis, the Court created a bright line test for whether a fee award arising out of post-petition litigation was a pre-petition contingent claim, and thus subject to the debtor's discharge. A claim would be contingent if the debtor "had a possible liability, and whether actual liability would attach to him was contingent *upon what others might do*." *Id*. at 533 (emphasis added). The Court then concluded that the *Siegal* debtor did not meet this test because he initiated the post-petition litigation.

In the companion case of *In re Ybarra*, this Court confronted a similar issue and came to a similar result. The debtor filed a state court action against her employer for employment discrimination. *Ybarra*, 424 F.3d at 1020. While the suit was pending, she filed for Chapter 11 bankruptcy. *Id*. The case was converted to Chapter 7 and the debtor received her discharge. *Id*. at 1020-21. In her bankruptcy schedules, the debtor exempted the full value of the lawsuit. She then continued with the litigation after discharge. *Id*. She lost, and upon losing, the state court awarded the employer its fees and costs. *Id*. at 1021. The debtor argued that these fees were discharged as they arose out of a pre-petition claim. *Id*.

This Court disagreed. Relying on *Siegel*, and out-of-circuit opinions which came to the same conclusion, the Ninth Circuit again held that when attorney's fees are awarded solely because the debtor voluntarily chose to bring or continue a suit post-petition, they are not considered pre-petition claims subject to discharge.

> In sum, we have held that post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily "pursue[d] a whole new course of litigation," commenced litigation, or "return[ed] to the fray" voluntarily. *Siegel*, 143 F.3d at 533-34. We have also endorsed the notion that by voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation.

*Id*. at 1024.

## C. *SNTL* Muddies the Waters

After the *Ybarra* decision, this Court did not consider the issue of the accrual of attorneys' fees and costs in bankruptcy until *SNTL Corp*. in 2009.

In *SNTL Corp.*, an entity known as Centre sued the predecessor in interest of debtor, SNTL Corp., claiming breach of certain reinsurance agreements. *SNTL Corp*., 571 F.3d at 830. At the same time, the California Commissioner of Insurance was in the process of placing certain affiliates of the SNTL Corp. in conservatorship. *Id*. at 832. Centre and the SNTL Corp. then settled their dispute. *Id*. at 831. The settlement agreement provided for a payment by SNTL Corp. to Centre and included a clause stating that Centre could void the settlement agreement if any part of the settlement

payment was deemed a preference or otherwise avoided by the Insurance Commissioner. *Id*.

Shortly after payment of the settlement amount, the Insurance Commissioner placed SNTL Corp.'s affiliates in conservatorship and then liquidated them. *Id*. at 832. A month later, the SNTL Corp. filed for Chapter 11 bankruptcy. *Id*. at 831-32. The Insurance Commissioner sued Centre in state court claiming the settlement payment could be avoided as a preference. *Id*. at 832. After three years of litigation, Centre settled the case with the Insurance Commissioner and agreed to return part of the settlement payment. *Id*. at 832. Centre then filed a proof of claim to include the amounts paid to the Insurance Commissioner and its post-petition attorney's fees arising out of the lawsuit and the claim objection. *Id*. at 832. SNTL Corp. objected to the claim, lost, and appealed to this Court. *Id*.

This Court concluded that the fee award arose pre-petition under the Ninth Circuit's "fair contemplation" test. "Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id*. at 839. The claims and litigation were fairly contemplated as the settlement agreement between Centre and SNTL Corp. included a clause expressly addressing the risk of the settlement being treated as a preference. *Id.* at 839. Thus, the Court held that Centre's attorney fee claim arose

pre-petition and that the bankruptcy court had therefore erred in disallowing it a arising from a post-petition debt. *Id*. at 845-86.

**D.** ***Castellino Villas* Harmonizes *Siegel* and *SNTL Corp.***

The holding of *SNTL Corp.*, which relies on the "fair contemplation" test for determining whether a fee award arose pre-petition, is difficult to square with the holding *Siegel*, which relies on a voluntariness test. Neither *Siegel* or *Ybarra* rely, or cite to, the "fair contemplation" test, despite the test being well established in this circuit before *Siegel* was decided. *See In re Jensen*, 995 F.2d 925, 930 (9th Cir. 1993).[5] This Court harmonized the two lines cases in *Castellino Villas*. In doing so, the Court confirmed that *Siegel* remained good law.

In *Castellino Villas*, the debtor hired a construction company to build an apartment complex. *Castellino Villas,* 836 F.3d at 1031. The contract included an attorneys' fees clause. *Id*. The debtor defaulted and the construction company filed a mechanics' lien, then a lawsuit to foreclose on the mechanics' lien. *Id*.

The debtor then filed for Chapter 11 bankruptcy. *Id*. at 1032. The construction company received an order granting relief from stay to continue the lawsuit in state court. *Id*. In order to resolve a plan objection by the construction company, the debtor and the construction company agreed to a settlement agreement to conclude the

---

[5] This apparent conflict was the cause of the bankruptcy court requiring multiple rounds of supplemental briefing, then only ruling after *Castellino Villas* was decided without briefing by the parties on how its holding affected the issue at hand.

litigation in state court regarding the validity of the mechanics' lien. *Id*. The plan was confirmed, the settlement agreement was approved, and the debtor received its discharge. *Id*.

The construction company prevailed in state court and then sought its attorneys' fees and costs. *Id*. The state court deferred on the issue due to the bankruptcy discharge. *Id*. The construction company then filed a motion in the bankruptcy court for a ruling on whether the attorneys' fees and costs were discharged. *Id*. On appeal, this Court concluded that the attorneys' fees and costs were properly part of the pre-petition claim and subject to discharge. *Id*. at 1037.

In doing so, the Court analyzed the holdings of *Siegel* and *Ybarra* in depth and concluded that the holdings of *Siegel* and *Ybarra* "is consistent with our fair contemplation test." *Id*. at 1035. The Court then found that "*Ybarra* and *Siegel* are not implicated here." *Id*.

The reasoning was simple. Unlike in *Ybarra* and *Siegel*, the debtor in *Castellino Villas* "merely continued to litigate the single legal action that [the construction company] had commenced before [the debtor] filed a petition in bankruptcy." *Id*. at 1036. "Nothing in the agreement or in the definition of 'claim' suggests that [the debtor's] efforts to defend itself in the ongoing litigation were outside the fair contemplation of the parties." *Id*. at 1036–37.

**E.**   **The Fee Award Here Arose Out Of A Lawsuit Voluntarily Pursued By Baroni And Outside Wells Fargo's Fair Contemplation**

In a Chapter 11 proceeding, entry of a discharge "discharges the debtor from any debt that arose before the date of [plan] confirmation." 11 U.S.C. § 1141(d)(1). The bankruptcy court correctly found that "Allana's objection to the Wells Fargo proof of claim was litigated largely after entry of the order confirming the Plan."[6] ER I:44, lines 14-15. However, the bankruptcy court, and the BAP, concluded that under *Castellino Villas*, the fee award fell within the "fair contemplation" test and was part of the pre-petition claim. ER I:44; ER I:23. In doing so, both the bankruptcy court and the BAP erred.

**1.**   **The Bankruptcy Court And The BAP Incorrectly Applied *Castellino Villas***

The bankruptcy court and the BAP both found it determinative that Baroni's bankruptcy plan expressly stated that Baroni would initiate a post-confirmation claim objection against Wells Fargo. Both the bankruptcy court and the BAP analogized this plan provision with the settlement agreement in *Castellino Villas* that lead to the post-confirmation litigation. Seemingly on that basis alone, the bankruptcy and the BAP concluded that the fee award was within Wells Fargo's "fair contemplation" and thus part of the pre-petition claim. ER I:46, lines 1-10; ER I:21, lines 13-28.

---

[6] The plan was confirmed on April 15, 2013. ER II:241. The lawsuit was filed on April 3, 2013. ER III:2. However, the summons and complaint was not served until April 17, 2013. ER III:2. Therefore, Wells Fargo was not brought into the lawsuit until post-confirmation.

The bankruptcy court and BAP misread the importance of the settlement agreement in the *Castellino Villas* decision. The settlement agreement was not the determinative factor itself. Instead, what dictated the outcome in *Castellino Villas* was that the construction company "commenced an action under that contract against [the debtor] in state court before [the debtor] filed a Chapter 11 bankruptcy petition." *Castellino Villas*, 836 F.3d at 1036. As the litigation was initiated pre-petition by the construction company, it was clear that the debtor did not voluntarily sue.

The role of the settlement agreement in *Castellino Villas* was limited to determining whether the decision to restart the litigation was a voluntary act by the debtor to "return to the fray." Because the "preconfirmation settlement agreement between [the construction company] and [the debtor] required the parties to complete the state court litigation," it was not a voluntary act of the debtor. *Id*. To the contrary, "in order to obtain [the construction company's] agreement to withdraw its objections to the plan of reorganization, [the debtor] and [the construction company] agreed to litigate [the construction company's] mechanic's lien claim to conclusion." *Id*. at 1036. Therefore, the debtor "merely continued to litigate the single legal action that [the construction company] had commenced before [the debtor] filed a petition in bankruptcy." *Id*. at 1037.

Baroni's litigation is entirely distinguishable. Here, there was no pre-petition litigation at all between Baroni and Wells Fargo from which a contingent attorneys'

fee claim could arise. Therefore, Baroni's plan is not a negotiated agreement between the parties to continue pre-confirmation litigation. Instead, Baroni's plan is, at most, an agreement between the parties that Baroni is not barred from bringing post-confirmation litigation regarding the validity of the loan. Under *Siegel*, a fee award arising out of post-confirmation litigation is only part of a pre-petition claim if Baroni did not voluntarily start or continue that litigation. *Siegel*, 143 F.3d at 533.

The litigation at issue here was entirely discretionary. Baroni's plan provides that, upon completion of payments, she will receive a Chapter 11 discharge. ER II:292. At that time, any personal liability she has under the loan documents will be extinguished. 11 U.S.C. § 524(a). Wells Fargo never threatened or filed any lawsuit which required her to engage in litigation with Wells Fargo or otherwise imperiled her fresh start under the plan. In fact, Wells Fargo did not even object to the bifurcation of its claim under the plan. Had Baroni declined to file her adversary proceeding with Wells Fargo, there would have been no need for either side to incur attorneys' fees.

Further, the fact that Wells Fargo had a lien against Baroni's property did not make her actions any less voluntary. It is well established that a discharge only affects a debtor's personal liability; it does not affect *in rem* rights against property. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). This is true whether or not a proof of claim is filed. *In re Bisch*, 159 B.R. 546, 549 (B.A.P. 9th Cir. 1993). "Any time debtors hold disputed claims or property interests at the time of their bankruptcy

filing, those claims or interests are at risk of being forfeited unless they or their estate take postpetition action to preserve them." *In re Gillespie*, 516 B.R. 586, 592 (B.A.P. 9th Cir. 2014). Therefore, the requirement that a debtor make payments to prevent foreclosure on a post-petition lien is not considered interference with the debtor's fresh start. *Id.* at 592-93. If Baroni did not wish to bear the burdens of the lien, she was free to surrender the property in her plan. She did not and any post-petition litigation regarding the lien was voluntary and not subject to discharge. *Id.*; *see also In re Sure-Snap Corp.*, 983 F.2d 1015, 1017–18 (11th Cir. 1993).

Further, the fact that Baroni disclosed the intent to sue does not make the fee award dischargeable despite the clear holding of *Siegel*. The test is not that Wells Fargo could contemplate being sued, but that the lawsuit was within the "fair contemplation" of Wells Fargo. *Siegel*, *Ybarra*, and *Castellino Villas* squarely hold that a post-petition lawsuit is not fairly contemplated if the filing of the lawsuit is an entirely voluntary act by the debtor. Knowledge of intent by the debtor to sue is not relevant. To hold otherwise would entirely, and improperly, allow a debtor to decide if post-confirmation litigation was dischargable simply by putting the creditor on notice of the lawsuit.

### 2. Wells Fargo Had No Duty Or Right To Object To The Plan

Both the bankruptcy court and the BAP concluded that if Wells Fargo felt the fees should be treated as a post-petition claim, "it was incumbent on Wells Fargo to

raise any concerns it had about the treatment and discharge of that claim under the Plan at the time the Plan was confirmed." ER I:47, lines 15-17; ER I:19, lines 10-18. The BAP further states that "Wells Fargo did not so object to the Plan; now, faced with the consequences of that failure, it seeks an end-run around the terms of the confirmed plan." ER I:22, lines 19-21. This analysis does not hold water as nothing in the plan obligated, or even allowed, Wells Fargo to object regarding the treatment of speculative post-petition attorneys' fee award.

Wells Fargo fully agrees that had the plan stated that any post-petition fee award regarding the litigation was to be treated as a dischargeable pre-petition claim, such treatment would be binding on Wells Fargo whatever the treatment allowed under the Bankruptcy Code. *See In re Pardee*, 193 F.3d 1083, 1086 (9th Cir. 1999); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). However, the bankruptcy court expressly, and correctly, found that Baroni's plan "did not address the issue of attorneys' fees." ER I:45, line 15. Therefore, the assertion that Wells Fargo is trying to circumvent an unfavorable plan treatment is entirely unfounded.

Further, there was no legal basis for Wells Fargo to demand that Baroni treat the attorneys' fee award in the plan. The Bankruptcy Code imposes numerous requirements regarding the classification and treatment of claims in the bankruptcy plan. 11 U.S.C.§§ 1123, 1129. A claim is limited solely to rights that existed as of the petition date. 11 U.S.C. § 502(b). Nothing in the Bankruptcy Code requires or

allows Baroni to classify, modify, or otherwise treat rights or obligations that arose post-confirmation. As Wells Fargo considered any such fee award as one such post-confirmation claim, it rightfully did not object.

Indeed, if Baroni believed any fee award arising out of post-petition litigation should be treated as part of any creditor's pre-petition claim, it was her right and duty to so provide in her plan. Baroni's failure to do so is cause to treat the fee award as a post-petition claim not subject to discharge. *Wright*, 509 B.R. at 258 ("[T]he Court now concludes that by not addressing the post-confirmation award of attorneys' fees and costs to Country, the Debtor determined, at the point of confirmation, to pursue the litigation at his own risk, and any attorneys' fees and costs incurred by him post-confirmation would be his sole personal liability not subject to a discharge in his case").

Finally, the bankruptcy court and BAP are also wrong to the extent they suggested that Wells Fargo should have objected to the clause in Baroni's plan allowing her to bring a post-petition objection to Wells Fargo's claim. Baroni was legally entitled to object to Wells Fargo's claim and to bring related claims via an adversary proceeding. 11 U.S.C. § 502(a),(b); Fed. R. Bankr. P. 3007(b), 7001. In order to preserve the right to do so post-confirmation, Baroni was required to reserve the right in her Chapter 11 plan. *In re Kelley*, 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996). Wells Fargo had no grounds to object to Baroni's reservation of right to sue

Wells Fargo, even if Wells Fargo believed, and ultimately proved, that the suit was groundless.

### 3. The Fee Award Was Not A Pre-Petition Claim Even If The Plan Satisfied The "Fair Contemplation" Test

Even if the BAP and the bankruptcy court were correct that reasoning that Baroni's Chapter 11 plan was "a contract between the debtor and its creditors" which "put Wells Fargo on notice that allowance of its claim would be adjudicated after confirmation of the Plan," those facts still did not show that the attorney fee claim for that proposed litigation was in Wells Fargo's "fair contemplation" pre-petition or even pre-confirmation. ER I:46, lines 4-5; ER I:21, lines 19-20.

A plan is only binding on creditors once confirmed. See 11 U.S.C. § 1141(a). Further, a Chapter 11 plan may provide that it takes effect after entry of the confirmation order. See 11 U.S.C. § 1129(a) (referring the "the effective date of the plan" as the operative date for determining value). When the plan does so, its terms take effect on the specified effective date. *In re WCI Communities, Inc.*, 2013 WL 2153108, at *2 (Bankr. D. Del. May 17, 2013) ("The Plan was confirmed on August 26, 2009 and went into effect on September 3, 2009"); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 131 (Bankr. D.N.J. 2010) ("the loan converts to equity on the effective date of the plan").

Here, the plan set an effective date of May 1, 2013, ER II:264, lines 21-22, though the plan was confirmed the prior month, April 2013. ER II:241. A Chapter 11

discharge applies only to debts that "arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1). Under the fair contemplation test, a "claim arises under the bankruptcy code once it is within the claimant's 'fair contemplation.'" *In re Zilog, Inc.*, 450 F.3d 996, 1000 (9th Cir. 2006). If the binding effect of Baroni's plan caused Wells Fargo to fairly contemplate the fee award, that binding effect occurred only after confirmation of the plan. Therefore, the fee award claim arose post-confirmation.

If the date of confirmation is the date the claim arises, the same result applies. The discharge only applies to debts that "arose before the date of such confirmation," not debts that accrued on the date of confirmation. 11 U.S.C. § 1141(d)(1). Therefore, even if the fee award accrued on the date of confirmation, it is not subject to discharge.

Finally, even if notice of the plan itself caused the contingent claim to arise, the bankruptcy court's order is still materially erroneous as that notice occurred post-petition.[7] The bankruptcy court ordered that the fee award as "shall be added to the allowed amount of Proof of Claim 7-1." ER I:29, lines 13-14. The allowed amount of a proof of claim, upon objection, is "determine[d] . . . as of the date of the filing of the

---

[7] It should be noted that neither the BAP nor the bankruptcy court concluded that was the case, as both relied on the binding effect of the plan to conclude that fee awarded was a pre-petition claim. ER I:46, lines 4-8; ER I:22, lines 10-21. As argued on p.26, above, any reading that the filing of the plan itself caused the contingent claim to arise is entirely at odds with *Siegel* and *Castellino Villas*.

petition." 11 U.S.C. § 502(b). Therefore, "a holder of a post-petition 'claim' that is not entitled to administrative-expense priority cannot be a creditor, cannot file a proof of claim, and, even if he could file one, cannot by definition have an 'allowed' claim as of the petition date." *In re Ockerlund Const. Co.*, 308 B.R. 325, 331 (Bankr. N.D. Ill. 2004). Accordingly, while under this theory the fee award may have been subject to discharge, it could not have been added to the pre-petition claim. *See In re Polysat, Inc.*, 152 B.R. 886, 892 (Bankr. E.D. Pa. 1993) (*citing Sure-Snap Corp.*, 983 F.2d at 1017–18).

Any such error is material. Debtor's plan only treats pre-petition claims. If the fee award is a post-petition, but pre-confirmation claim, then Wells Fargo may collect through the deed of trust even if the personal liability is ultimately discharged. Further, Debtor's Chapter 11 plan only stays "collection or enforcement of pre-petition claims." ER II:292, lines 2-6. Such discharge will occur after Baroni makes her final payment under the plan, which may not be until May 1, 2043. 11 U.S.C. § 1141(d)(5)(A); ER II:279. Wells Fargo can and will collect on it in the meanwhile.

### 4. Wells Fargo's Filing Of Its Claim Did Not Place The Fee Award Within Its Fair Contemplation

The bankruptcy court also found that this case was analogous the claim litigation in *SNTL Corp.* and the foreclosure on the mechanic's lien in *Castellino Villas* because Wells Fargo filed a proof of claim. ER I:45, lines 4-11. The bankruptcy court thus concluded that any fee award arising out of claim litigation was

within Wells Fargo's fair contemplation. ER I:47, lines 15-17.[8] This analysis takes an overly broad view of the "fair contemplation" test.

In *SNTL Corp.*, this Court concluded that the litigation arising out of the pre-confirmation settlement agreement was fairly contemplated as the pre-confirmation settlement agreement expressly called for further litigation if the Insurance Commissioner sought to treat the settlement as a preference in the pending conservatorships.

> Here, the parties contemplated that Centre could have a claim against SNIG in the event a payment made by the primary obligors under the PCSA constituted a preferential transfer. Article X was drafted to cover that contingency. The Debtors filed their respective chapter 11 petitions after the Commissioner placed the primary obligors into conservation. As the conservation was commenced approximately three months after the PCSA payments were made, an action by the Commissioner to recover those payments as preferential could have been reasonably and fairly contemplated by SNIG and Centre as of the petition date.

*SNTL Corp.,* 571 F.3d at 839.

Similarly, in *Castellino Villas*, there was pre-petition litigation regarding a breach of contract and a *lawsuit* to foreclose on a mechanics' lien. *Castellino Villas*, 836 F.3d at 1031. The construction company filed a motion for relief from stay to continue that pre-petition lawsuit. *Castellino Villas*, 836 F.3d at 1031. The fee award arose out of that pre-petition lawsuit. *Id*. at 1032. Therefore, the construction com-

---

[8] This portion of the bankruptcy court's order was not a stated basis of the BAP in affirming the judgment.

pany also fairly contemplated that the proof of claim would include a fee award arising out of pre-confirmation it initiated.

Wells Fargo's filing a proof of claim in Baroni's bankruptcy is entirely different. Filing a proof of claim is an administrative act which is a necessary prerequisite in order to preserve the right to payment under the note or deed of trust. *In re Baldridge*, 232 B.R. 394, 396 (Bankr. N.D. Ind. 1999) ("Before a creditor can have a secured claim, it must first have an allowed claim . . . and the first step to having an allowed claim is to file a proof of claim"); *see also State Unauthorized Practice of Law Comm. v. Paul Mason & Assocs., Inc.*, 46 F.3d 469, 472 (5th Cir. 1995). Wells Fargo's proof of claim does not arise out of pre-petition litigation, but out of consensual loan. No pre-petition litigation occurred on the loan. The vast majority of proofs of claims do not result in claim objections. Therefore, unlike *SNTL Corp.* and *Castellino Villas*, there was nothing in the circumstances of filing the proof of claim that would create the "fair contemplation" that it would result in a claim objection and a fee award.[9]

Even if a claim objection is somehow exempt from the rule set forth in *Siegel* and its progeny, Baroni sought affirmative relief outside the claim objection. Baroni's

---

[9] It is worth noting that the proof of claim at issue here was filed by Wells Fargo in June of 2012. ER II:140. At that time, Baroni had not filed any plan or disclosure statement at all, much less one setting forth her intent to object to Wells Fargo's claim. Therefore, Wells Fargo was not even on notice that the filing of the claim in this case would result in a claim objection.

adversary complaint brought four causes of action for (1) Declaratory Relief / Invalidate Lien [Fed. R. Bankr. 7001]; (2) Quasi Contract / Unjust Enrichment / (3) Violation of 15 U.S.C. § 1692, et seq. [the FDCPA]; and (4) California Business and Professions Code § 17200 et seq.  ER II:230-238.  These causes of action sought the affirmative relief of disgorgement of any pre-petition payments collected by Wells Fargo (ER II:233, ¶ 41), actual and statutory damages for seeking to collect on the mortgage loan both pre- and post-petition (ER, II:234-235, ¶¶ 50, 54), and for seeking to enforce the deed of trust pre- and post-petition (ER II:236, ¶ 61).  Further, Baroni sought not only actual and special damages, but punitive damages and an order voiding any lien against the property.  ER II:238.

A claim objection is a very limited proceeding.  "[I]f such objection to a claim is made, the court . . . shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount."  11 U.S.C. § 502(b).  Therefore, a claim objection is limited to the "existence, validity, and enforceability of claims."  *In re Palmdale Hills Prop., LLC*, 423 B.R. 655, 665 (B.A.P. 9th Cir. 2009), *aff'd*, 654 F.3d 868 (9th Cir. 2011).  The relief that can be awarded is limited solely to the disallowance of the claim.  "[I]f a debtor succeeds in a claim objection, the debtor does not recover property from the creditor."  *Id*.

Wells Fargo argued below that because Baroni sought affirmative relief, any unstated exception under *Siegel* for claim objections did not apply to the claims for affirmative relief.  ER II:44-46.  The bankruptcy court agreed that "Allana's post-confirmation litigation was styled as an adversary proceeding, and sought affirmative relief in addition to disallowance of Wells' Fargo's claim."  However, the bankruptcy court concluded that this was irrelevant as "the gravamen of the complaint was that Wells Fargo did not have standing to enforce its mortgage debt against Allana or the Henderson property."  ER I:47, lines 22-23.  Therefore, "all of these claims are within the contemplation of the Plan and its reservation of rights."  ER :47, lines 26-27.

As set forth on pp. 23-26, above, Baroni's reservation of rights in the Chapter 11 plan to file suit does not put an attorneys' fee award in the "fair contemplation" of the parties.  Regardless, it does not matter.  Even if the filing of a proof of claim somehow is considered the pre-confirmation initiation of litigation, this Court made clear in *Castellino Villas* that its holding did not extend to cases where a debtor "was [] relieved of liability under its agreement . . .  and given a fresh start by its discharge in bankruptcy."  *Castellino Villas*, 836 F.3d at 1036.  Baroni's claims for actual, statutory, and punitive damages are brought only for her personal benefit and have nothing to do with the allowance of the proof of claim.  "Personal liability for fees incurred through the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge."  *Ybarra*, 424 F.3d at 1026.  Therefore, as to

the claims for affirmative relief, Baroni "chose to return to the fray and to use the contract as a weapon. It is perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against [her]." *Siegal*, 143 F.3d at 533.

Finally, as set forth on p. 31, above, the bankruptcy court's order expressly held that the fee award was part of Wells Fargo's pre-petition claim. For the same reasons as set forth in that section, that portion of the order is erroneous even if the bankruptcy court was correct that the filing of the claim caused the fee award to arise pre-confirmation under bankruptcy law. Wells Fargo filed the claim after debtor filed for bankruptcy. If that is the date the claim arose, it would still be a post-petition, pre-confirmation claim.

5. **The Filing Of A Chapter 11 Case Does Not Mandate A Different Result**

The bankruptcy court and the BAP also found that the "structural differences" between a Chapter 7 and Chapter 11 gave weight to their finding that the claim arose pre-petition. Specifically, both the bankruptcy court and the BAP noted that under Chapter 11, a debtor is authorized to include in the plan terms allowing for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." ER I:45 n.8, I:23, lines 6-15.

The BAP and bankruptcy court failed to explain why this "structural difference" mandates a different result in a Chapter 11 case. The quoted clause simply provides

that a debtor may implement the terms of the plan by prosecuting claims belonging to the bankruptcy estate or assigning them to some other entity to do so on the estate's behalf. Chapter 7 contains no similar right for a debtor to reserve the right to bring claims on behalf of the bankruptcy estate. Instead, such right is exclusively reserved for the Chapter 7 trustee until the claim is abandoned to the debtor. See 11 U.S.C. §§ 554, 704. The problem here is that there was no actual finding that Baroni in fact retained the claims for the benefit of the estate.

Nor could the bankruptcy court make such a finding. Baroni's plan provided that "confirmation of the Plan vests all property of the estate in the Debtor" and that "[p]ostconfirmation, all causes of action which will revert to the Debtor. Debtor shall have the right to assert any or all of the above causes of action post-confirmation in accordance with applicable law." ER II:40, line 1; ER II:41, lines 8-10. Nothing in the plan provides that if the lien against the Property is deemed void, the value of the property will granted to the estate's creditors. Instead, the plan provided for fixed payments to each creditor regardless of debtor's recovery on the pre-petition claims. See ER II:264-267. Funding for the plan was not predicated on recovery from the lawsuits, but from the rental payments on the various properties with the liens in place. ER II:284-285; ER 295-297. Accordingly, while the claims of the bankruptcy estate were vested in Baroni, so was the right to recovery. This is not a case where the costs of such litigation are properly charged to the creditors of the estate.

Finally, numerous courts have considered this issue and concluded that a Chapter 11 debtor is no less liable for post-confirmation fee award than a Chapter 7 debtor. This exact issue was considered in the 11th Circuit case of *In re Sure-Snap Corp.* There, as in this matter, a post-petition, pre-confirmation lawsuit for declaratory relief action regarding the validity of a claim was filed in bankruptcy court in a Chapter 11 proceeding. *Sure-Snap Corp,* 983 F.2d at 1017. The 11th Circuit concluded that by "choosing to appeal the validity of the Agreement after confirmation, Sure-Snap did so at the risk of incurring post-confirmation costs involved in its acts" and ruled that the post-confirmation fees were not subject to discharge. *Id.* at 1018. This decision was specifically relied on in both *Siegel* and *Ybarra. Siegel*, 143 F.3d at 533; *In re Ybarra*, 424 F.3d 1018, 1024 (9th Cir. 2005). Further, this analysis is consistent with every other reported case to consider this issue in the context of an individual Chapter 11. *See Wright*, 509 B.R. at 259 ("Wright also had the power, under his Plan, to decide which claims to pursue. In deciding post-confirmation to pursue Country in the State Court Lawsuit, he assumed the risk of personally paying for any attorneys' fees or costs that he might incur"); *Nukote Int'l, Inc. v. Office Depot, Inc.*, 2011 WL 2784565, at *3 (S.D. Fla. July 14, 2011) ("Nukote continued litigating this case after confirmation of its plan, and Office Depot had no choice but to defend against Nukote's claims. Nukote is thus responsible for the attorneys' fees Office Depot incurred after the bankruptcy confirmation"); *In re*

*Grynberg*, 143 B.R. 574, 577 (D. Colo. 1990), *aff'd*, 966 F.2d 570 (10th Cir. 1992) ("In electing to pursue their appeal after filing for bankruptcy, the Grynbergs were acting . . . at the risk of incurring the post-petition costs involved in their acts.")

## VI.

## CONCLUSION

For the reasons stated above, the Court should reverse the order insofar as it determines that the "award shall be added to the allowed amount of Proof of Claim 7-1 and shall be subject to treatment and discharge under Baroni's confirmed Chapter 11 plan."


DATED:  September 13, 2018

SEVERSON & WERSON
A Professional Corporation


By:      */s/ Bernard J. Kornberg*
         Bernard J. Kornberg

Attorneys for Defendant and Cross-Appellant Wells Fargo Bank, N.A., as Trustee

# STATEMENT OF RELATED CASES

Defendants and respondents are not aware of any related case pending in this Court.

Dated:  September 13, 2017.

_/s/ Bernard J. Kornberg_
Bernard J. Kornberg

# CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 9,226 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman, 14 point type.

Dated:  September 13, 2017.

*/s/ Bernard J. Kornberg*
Bernard J. Kornberg

| 9th Circuit Case Number(s) | 17-60062 |
| --- | --- |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on September 13, 2018. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| Signature | /s/ Bernard J. Kornberg |
| --- | --- |